UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| KENNETH D. MISCHKE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:19CV145 HEA |
| ) | |
| ANDREW M. SAUL, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the court for judicial review of the final decision of the Commissioner of Social Security denying the application of plaintiff for disability insurance benefits under Title II, 42 U.S.C. §§ 401, *et seq*. and denial of supplemental security income benefits under Title XVI, 42 U.S.C. §§ 1381, *et seq*. The Court has reviewed the filings and the administrative record as a whole which includes the hearing transcript and medical evidence. The decision of the Commissioner will be affirmed.

**Background**

On September 16, 2016, Plaintiff protectively filed applications for DIB and SSI. (Tr. 10) December 6, 2016, Defendant issued a *Notice of Disapproved Claims*. (Tr. 145) December 29, 2016, Plaintiff filed a *Request for Hearing by*

*Administrative Law Judge* (ALJ). (Tr. 153). After a hearing, ALJ Thomas Cheffins issued an unfavorable decision dated October 24, 2018. (Tr. 7-27). On November 2, 2018, Plaintiff filed a request for review of the hearing decision with Defendant agency's Appeals Council. (Tr. 210).  On July 24, 2019, the Appeals Council denied Plaintiff's request for review. (Tr. 1).  The decision of the ALJ became the final decision of Defendant agency.  Plaintiff exhausted the administrative remedies.

In the decision, the ALJ found Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine; tendinitis/degenerative joint disease of the elbows, degenerative joint disease and tendinosis/torn tendon of the right shoulder, a torn left biceps tendon, obstructive sleep apnea, and morbid obesity. The ALJ found Plaintiff had the non-severe impairments of diabetes mellitus, hypertension, left leg paresthesia, left knee pain, right ankle pain, a traumatic brain injury, headaches, and vertigo. While the ALJ found none of Plaintiff's impairments met or equaled a listed impairment, he did find some limitations. (Tr. at 13). Specifically, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform:

> a range of light work, which is defined in 20 CFR 404.1567(b) and 416.967(b).  He cannot climb ladders, ropes, or scaffolds, and he can only occasionally stoop, crouch, kneel, crawl, and climb ramps and stairs. The claimant can frequently reach but only occasionally reach overhead with bilateral upper extremities. He must avoid concentrated exposure to excessive vibration, hazardous machinery, and unprotected heights.

2

Based on vocational expert testimony, the ALJ found Plaintiff was unable to perform any of his past relevant work but could perform other work such as toy assembler and copy machine operator.

Plaintiff filed a timely Request for Review of Hearing Decision/Order. The Appeals Council, on July 24, 2019, denied the request. Plaintiff has exhausted all administrative remedies. Thus, the decision of the ALJ stands as the final decision of the Commissioner.

### Hearing Testimony

Plaintiff appeared and testified at the hearing. He stated that he lived in a single-story house with his wife and three children. He has 12 years of school and has had truck drivers' training (CDL). The last time he worked was in 2016 at an apartment complex fixing up apartments. His last full-time job in 2013 was working on the Crawford County roadcrew. Prior to that, he drove a dump truck for Western Equipment.

Plaintiff also testified that he continued to look for employment; he last applied for a job a few days before the hearing. He testified that he had little short-term memory which he attributed to the traumatic brain injury in 2002.

Plaintiff testified that he uses a cane to walk, but no one has prescribed it for him. He has been told to lose weight, and that he thinks his pain might improve if he did lose weight. He can walk about thirty minutes. He endures leg and back

pain. Plaintiff testified that he can sit for 20-30 minutes at a time. He also testified that he has migrainous vertigo and very often has to go to a dark room during an episode. Plaintiff testified that he has bad shoulders, but they do not bother him as much as the arthritis in his elbows. He testified that he takes medication for depression. He stutters trying to "get things out" and he has eye tics.

Plaintiff cares for his three year old son. He goes to church and attends his children's activities. He still drives a car, but not much. He cares for the family pets. Plaintiff also does some shopping.

A vocational expert also testified at the hearing and provided vocational interrogatory responses after the hearing.

## Legal Standard

To be eligible for DBI under the Social Security Act, Plaintiff must prove that he is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual will be declared disabled "only if [his]

physical or mental impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). At Step One, the ALJ determines whether the claimant is currently engaged in substantial gainful activity. At Step Two, the ALJ considers whether the claimant has a "severe" impairment or combination of impairments. At Step Three, the ALJ determines whether the severe impairment(s) meets or medically equals the severity of a listed impairment; if so, the claimant is determined to be disabled, and if not, the ALJ's analysis proceeds to Step Four. At Step Four of the process, the ALJ must assess the claimant's residual functional capacity (RFC) – that is, the most the claimant is able to do despite his physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform any past relevant work. *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process).

The claimant bears the burden through Step Four of the analysis. If he meets this burden and shows that he is unable to perform his past relevant work, the

5

burden shifts to the Commissioner at Step Five to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with his impairments and vocational factors such as age, education, and work experience. *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012).

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Jones*, 619 Additionally, the Court must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, the Court must affirm the Commissioner's decision; the Court may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *Id; see also Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017).

## Decision of the ALJ

At Step One of the of the decision from October 24, 2018, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 15, 2015, his alleged onset date. At Step Two, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine; tendinitis/degenerative joint disease of the elbows, degenerative joint disease and tendinosis/torn tendon of the right shoulder, a torn left biceps tendon, obstructive sleep apnea, and morbid obesity. The ALJ found Plaintiff had the non-severe impairments of diabetes mellitus, hypertension, left leg paresthesia, left knee pain, right ankle pain, a traumatic brain injury, headaches, and vertigo.  The ALJ found Plaintiff did not have an impairment or combination of impairments listed in or medically equal to one contained in the Listings, 20 C.F.R. part 404, subpart P, appendix 1, (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

The ALJ determined that plaintiff retained the residual functional capacity to perform a range of light work. He cannot climb ladders, ropes, or scaffolds, and he can only occasionally stoop, crouch, kneel, crawl, and climb ramps and stairs. The claimant can frequently reach but only occasionally reach overhead with bilateral upper extremities. He must avoid concentrated exposure to excessive vibration, hazardous machinery, and unprotected heights.

At Step Four, the ALJ found that plaintiff is unable to perform his past relevant work as a road maintenance worker, dump truck driver, and tractor trailer truck driver.  At Step Five, the ALJ found that there are jobs that exist in significant number in the national economy that Plaintiff could perform, such as a toy assembler and copy machine operator.  Therefore, the ALJ found Plaintiff not disabled.

## Statement of the Issues

Generally, the issues in a Social Security case are whether the final decision of the Commissioner is consistent with the Social Security Act, regulations, and applicable case law, and whether the findings of fact are supported by substantial evidence on the record as a whole. The issues here are: 1.) The ALJ failed to properly evaluate opinion evidence; 2.) The ALJ failed to properly evaluate Step 2 of the sequential evaluation; and 3.) The ALJ failed to properly evaluate residual RFC.

## Discussion

**Opinion Evidence**

Plaintiff argues the ALJ failed to properly consider opinion evidence. Mignon Makos, MD, is Plaintiff's "treating" neurologist. *See* 20 CFR § 404.1502.

On July 12, 2018, Dr. Makos completed a medical source statement confirming that she has been treating Plaintiff since April 9, 2018 for traumatic

8

brain injury (TBI), observable sleep apnea, obesity, memory impairment and cognitive dysfunction. (Tr. 1285)

Plaintiff argues that Dr. Makos provided the following signs and symptoms to support her opinion: slowed mentation; unable to provide a reliable, detailed history; and poor short-term and long-term memory. (Tr. 1285) Dr. Makos wrote that Plaintiff exhibits the signs and symptoms of TBI, including slowed mentation and poor memory. (Tr. 1286)

Dr. Makos opined that Plaintiff would be expected to miss at least one (1) to two (2) days of work per week secondary to headaches, low back pain, vertigo and left radicular pain into the left foot. (Tr. 1286) Dr. Makos opined: Plaintiff would be off task fifty percent (50%) of the workday; he would need to take unscheduled breaks every 15-20 minutes; his impairments have lasted at these levels since March 19, 2013; his impairments are reasonably consistent with the symptoms and functional limitations described in this evaluation; and Plaintiff is not a malingerer.

Plaintiff argues that Dr. Makos' treatment notes support her conclusions. Plaintiff argues that her opinions are also supported by objective testing, to which she had access, such as the VNG tests, neuropsychiatric test, CT and MRI.

The ALJ however, gave Dr. Makos' opinion "little weight" because CTs, MRIs and neurological findings were normal. (Tr. 19).  In addition, Plaintiff testified that his headaches and dizziness improved with medication and his CPAP

9

machine. Plaintiff's continued work and looking for work also indicates Plaintiff's ability to work. The ALJ also considered that Dr. Makos had been treating Plaintiff for a very short time.

With respect to Dr. Hart, Plaintiff also argues the ALJ failed to properly consider Dr. Hart's opinion. He argues that Dr. Hart reviewed all of the medical evidence from Mercy Hospital. He noted that an MRI of the brain on February 22, 2017 confirmed mild atrophy. (Tr. 1297) Plaintiff reported a typical day consists of watching his youngest child and completing some household chores such as dishes and vacuuming. He is able to adequately manage basic daily activities such as shopping, cooking basic meals, dressing and bathing. He manages his medications with a pillbox; however, he forgets to take his medication a couple of days per week. His wife manages the finances. (Tr. 1298) Plaintiff reduced his driving secondary to concerns about episodes of vertigo. Plaintiff's wife does a majority of the driving. (Tr. 1299)

On mental status examination, Dr. Hart observed flat affect and mood, speech was slightly slow, rate was notable for occasional halting at the beginning of sentences, Plaintiff worked slowly on testing and his effort was appropriate and hardworking, which indicates the results are a valid estimate of his abilities. Dr. Hart observed: motor function appeared slightly slowed in motor movements; Plaintiff reported balance difficulties that have worsened with vertigo; current

10

results indicate that Plaintiff's current general abilities are in a borderline range; verbal and visual memory were impaired overall; on language measures, confrontation naming was low average, semantic verbal fluency was borderline and phonemic verbal fluency was impaired; simple/complex processing speed were largely impaired; divided attention was borderline and complex problem solving was impaired; fine motor dexterity was borderline, bilateral; and responses to self-report measures of mood suggested severe current depression and moderate anxiety. (Tr. 1299).

The ALJ did not give Dr. Hart's opinion significant weight because it was not supported by the medical record as a whole. Plaintiff demonstrated alertness and intact behavior, mood, affect, speech, orientation, cognition, memory, thought, insight, and judgment. Plaintiff even noted mood stability with medication. Dr. Hart's opinion did not establish that, even assuming valid conclusions, there was no evidence to establish that the conditions noted by Dr. Hart lasted for at least twelve months.

Plaintiff admitted that he was able to mow his lawn with a riding mower, he cared for his son, both of which undercut his claim that his vertigo and memory loss were severe. *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018). Indeed, Plaintiff was employed a significant amount of time after the TBI.

The ALJ gave significant weight to the state agency psychological consultant. Dr. Sullivan's opinion was consistent with normal mental functioning of Plaintiff during most of the subject period. As Defendant correctly argues, it was not error to consider Dr. Sullivan's opinion since it is consistent with the medical evidence as a whole, whereas the treating providers' opinions were not supported by the medical evidence.

**Error at Step Two**

Plaintiff argues that the ALJ erred in his conclusion that Plaintiff's TBI was not a significant impairment. As discussed above, Plaintiff's TBI occurred significantly before his application. He was able to work for years after the TBI. Vertigo and headaches improved with blood pressure medicine and his CPAP machine. He is able to mow his lawn, care for his toddler son, do some household chores, build a doghouse. The medical evidence does not show deterioration of Plaintiff's cognitive functioning. Indeed, Plaintiff admitted to looking for work and was able to articulate his symptoms and daily activities at the hearing.

Plaintiff's neurological examinations were normal.

Although the ALJ found the TBI and vertical to be non-severe, he considered these in assessing Plaintiff's specific vocational preparation (SVP). Formerly, Plaintiff engaged in semi-skilled work, whereas, the ALJ concluded that Plaintiff was limited to an unskilled job. The SVP is lower for unskilled work.

**RFC**

A claimant's RFC is the most an individual can do despite the combined effects of all of his or her credible limitations. *See* 20 C.F.R. § 404.1545. An ALJ's RFC finding is based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir.2010); *see also* 20 C.F.R. § 404.1545; Social Security Ruling (SSR) 96–8p.

Plaintiff asserts that failure to find Plaintiff's TBI as severe affected the RFC finding. Plaintiff argues that the failure to find the TBI with resultant vertigo and paresthesia as severe resulted in an unsupportable RFC.

The Court's role in appeals of this nature is limited and deferential—the Eighth Circuit has held that the Court should "review the record to ensure than an ALJ does not disregard evidence or ignore potential limitations," rather than ensure that each and every aspect of the RFC determination is supported by citations to specific evidence in the record. *See Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090-91 (8th Cir. 2018) (internal quotation omitted).

The ALJ considered all of Plaintiff's medical evidence, his testimony and his activities he is able to perform with the TBI. He gave detailed analyses of his medical conditions and why he concluded the TBI was not severe. The weight he

gave to Plaintiff's treating providers was based on the record as a whole. These conclusions are based on substantial evidence in the record. The ALJ did not disregard evidence or ignore potential limitations. In spite of the non-severe finding, the ALJ factored it into Plaintiff's RFC. There was no error in his determination.

## Conclusion

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED.**

A separate judgment shall be entered incorporating this Memorandum and Order.

Date this 10th day of November, 2020.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE